Okay, may it please the court. I'm Paul Warren representing appellant James Wischmann in this case and I would like to reserve two minutes for my rebuttal here. So what this claim boils down to is whether the phrase we use surveys offered by the vocational expert at the very end of the hearing is sufficient to allow the vocational experts contradicted testimony in this claim to remain substantial evidence. So the recent case of White v. Kijakazi resolves any issues relating to whether appellant forfeited their opportunity to rebut the vocational experts testimony and whether the suggestion that appellants job numbers are insufficient purely because they're raw data unsupported by expert testimony or expert analysis. Now the question here is what is necessary to rebut a vocational experts testimony and whether it is a requirement that the claimant either follow the methodology relied upon by the vocational expert or whether the data from Job Browser Pro itself might be considered reliable as a general rule. Can I ask a question about the pages from I guess it's Job Browser Pro you're relying on. I think the government refers to it in its briefing as raw evidence or raw data. I don't think it's raw data but it certainly is pretty incomprehensible to a lay person. What? How does this support? I don't know which version you're looking at. I'm looking at ER 289 to 293. So there's a letter from the attorney on ER 287 and attached to it is some pages which as I understand it is what you're relying on for the strikingly different numbers. Yes I did want to just raise the ones that were in the certified record were a little bit messed up. We did submit additional ones at the district court level I believe. Yes the ones here were a little messed up. When we submitted our district court brief we did resubmit these job numbers as well just to make it a little more clear. Okay and where is that in the record? That was submitted with the brief. Okay. So I'm not sure where we would find that right now. But this is what was before the ALJ what I was. This was what was before. Well this was the appeals council. And we cannot verify that this was what the appeals council saw. This was just what was put in the administrative record. This was not how we submitted those to them. So the appeals council said that it was making this part of the record. It's a received additional evidence and this is what is in the record. So you're now saying this is not actually part of the record? I guess I'm not understanding. Independence or in appellant's brief we noted that we did file additional copies of those that were not corrupted. Okay. Are you familiar with the Good case from the 11th circuit? I have heard of it yes. Because the Good case actually drills down into the weeds here in a way that is relevant. And I think underscores the sort of need for foundation here. And that is you know what you submitted to the appeals council takes the DOT description bakery worker 524.687-022. And then in order to derive the numbers it pairs it to an SOC group 51-3099. And the Good case says that in that case the VE did exactly what you did. Which was to combine those two numbers together. And then the 11th circuit said that's a clear mistake. That the right SOC group is 51-9199. And it said the vocational expert in this case made a significant mistake. The vocational expert was wrong. And clearly so when he testified that the job of bakery worker was within SOC number 51-3099. Now I'm not saying Good is controlling or anything. But what it illustrates is that these numbers are meaningless. Unless they're accompanied by some explanation that tells you what to do with them. Which is a basic element of laying any kind of foundation for what you're claiming about a document. And there's no foundation here. And therefore why shouldn't we just say that this doesn't count as significant probative evidence under our case law. And therefore not sufficient to overturn the ruling. Of course. And there are two reasons for that. The first one is this was the very same source that the vocational expert testified to using. The vocational expert testified to using Job Browser Pro. Therefore if Job Browser Pro. But did he say he was using 51-3099? He did not offer any testimony on that. But he would not have been able to change that within the program. With Job Browser Pro you plug in the DOT code. It brings up the information. So it selects for you an SOC code that the 11th Circuit says is obviously wrong? It appears to do so, yes. But doesn't that and what the response to my fundamental point that all of this is unintelligible to anyone. Without someone guiding you through it with explanations to explain how things fit together. And you didn't do that. You just submitted the raw numbers and it's unintelligible. I would say that the 9th Circuit has already made that decision in both Buck and White. In that in both of those cases the vocational expert submitted Job or said they used Job Browser Pro. In both circumstances the representative submitted raw uncontested or just raw data from Job Browser Pro printouts.  So the only difference here is the fact that additionally the vocational expert testified to also using surveys. Otherwise there's no real distinction between this case and White. Do you want to save the rest of your time for rebuttal? I would like to, yes. All right, we'll hear from the government. You're on mute. Good morning. I'm Shada Stuckey appearing on behalf of the Commissioner of the Social Security Administration. Mr. Wishman seems to be asking for a kind of categorical rule where all a claimant needs to do to get a remand is present the Appeals Council with a printout and a layperson summary of the printout. The case law does not support a categorical rule. The Supreme Court rejected a categorical approach in BSTEC and White similarly holds that the substantial evidence inquiry for vocational expert testimony must proceed on a case-by-case basis taking into account all features of vocational experts testimony as well as the rest of the administrative record. This case presents different facts than White and a different result is warranted. We share the court's concerns about the foundation for the document submitted with the council's letter to the Appeals Council.  There's not a lot of foundation in the VE's testimony either. It's pretty conclusory. Just sort of says, well, here's a DOT number and then here's a bunch of numbers. There's absolutely no connection given for how they were derived or what assumptions were made. Your Honor, that's why it's important to look at the Bruce standard that applies in this case. Under Bruce, the question is whether when viewing the record as a whole, substantial evidence supports the ALJ Step 5 finding. And substantial evidence is a low bar. The evidence merely needs to be more than a mere scintilla or such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Now, you're right. We don't know everything about the vocational experts job estimates. But what we do know is that he relied on surveys and his own experience in addition to SkillTran Job Browser Pro. We also know... That wasn't entirely clear to me. I mean, the relevant portion of the transcript, it says, how did you calculate your numbers for these two jobs? Answer, the software that we use is SkillTran Browser, Job Browser Pro. Question, Job Browser based? It was derived from the Department of Labor data. So and sure, we use surveys. And with that, they're using the DOT specific numbers. It wasn't clear to me that he was saying, oh, we use surveys. And I had that as an additional parallel source to SkillTran. Or he was saying the Department of Labor uses surveys to get the data for the numbers that are then paired with the SkillTran Browser. Do you see the ambiguity? I do, Your Honor. We think it's relevant in one factor to consider in this case that Mr. Wishman's counsel asked only the bare minimum questions at the ALJ hearing to preserve the issue for appeal under Scheibe. Her questioning did not elicit any kind of meaningful explanation of the vocational expert sources and methodology. And Mr. Wishman's counsel did not follow the recommended procedures outlined in the Scheibe case. In that case, the court envisioned a process where the claimant would raise the issue and general sense at the hearing and then follow up with interrogatories or supplemental briefing to the ALJ who, you know, as the Scheibe court pointed out, was in the optimal position to resolve conflicts. Here, instead of following this recommended Scheibe procedure, Mr. Wishman's counsel asked a few not very probing questions at the ALJ hearing, waited for an unfavorable decision, and then sent these confusing data sheets and conclusory layperson summary to the appeals counsel. Basically, they made minimal efforts. And now, they're asking for a categorical rule that these minimal efforts automatically deprive an ALJ's decision of substantial evidence and require a remand. You know, creating a rule like this would only encourage future gamesmanship and inefficient litigation. Excuse me, what do you think is the best distinction between this case and White? How would we distinguish White? Well, in White, you know, if you look closely at White, the court gave credence to Mr. White's claim that he used the same methodology as the vocational expert. Now, we don't know exactly what was in the letter that Mr. White's counsel presented to the appeals counsel. We know that he presented screenshots from Skiltran Job Browser Pro, occupation descriptions from the DOT, and some kind of argument based on those occupation descriptions. Whatever else was in that letter, it was enough that the court did not critically explore the foundation for counsel's claims like the court had done in the Kilpatrick case. But what White and BSTEC emphasize is that there are no categorical rules. A case-by-case analysis is required. And in this case, the computer printouts are confusing and call for a critical examination. They do not meet the Kilpatrick foundational requirement. And we'd like also to point out that counsel has said that there's no opportunity to input NAICS codes into Skiltran Job Browser Pro. In fact, even if you look at ER or CAR 290 under the heading method, it says relevant NAICS industries for the DOT occupation are suggested by Skiltran and customer choice in a process of continuous peer review. Now, we know that some versions of Skiltran, some older versions of Skiltran do allow users to put in different NAICS codes to get what they believe to be more accurate results. We do not know here which version was used by counsel. And we'd also like to point out that the numbers here are extreme. If you look at the position, Mr. Wishman's counsel proposes that there are only 45 positions nationally for bakery helper conveyor line. You know, a quick internet search shows that Nabisco alone employs about 200 bakers in their factory in Portland. Hit the news because bakers went on strike last year. Isn't this something that would make more sense for the ALJ to consider? I mean, Kilpatrick, the Kilpatrick's attorney didn't use the same methodology and we thought it was clear on its face that there wasn't any basis for it. Here, Mr. Wishman's attorney purports to use the same methodology, comes up with different numbers. Why wouldn't we just send it back to the ALJ to figure this out? We're not experts in Job Browser Pro. Right. And again, the BRU standard is very important here. Again, we don't know everything about the vocational expert's job estimates, but we know that he relied on surveys, his own experience. And in addition to Skiltran Job Browser Pro, we know from this court's decisions in Bayless and Ford that a vocational expert's recognized expertise provides the necessary foundation for his or her testimony and no additional foundation is required. Additionally, we know from the Supreme Court's decision in BSTEC and from SSA manuals that vocational experts are required to meet certain standards, such as to have expertise and current knowledge of working conditions and physical demands of various jobs. The vocational expert in this case had that expertise. So are you saying that there should be a rule instead of the per se rule you accuse opposing counsel of seeking? You're seeking a rule that the numbers can't be challenged without a vocational expert on your side. So there would have to be a VEE coming in to provide a Job Browser Pro rent-out plus an explanation. Is that what you're saying? That, I mean, that would be a great rule. But even here, I mean, just on a case-by-case fact-specific analysis, we do not have any sort of data sheets that have the foundation to challenge this inherently reliable vocational expert testimony. You know, the question is whether the vocational expert's experience, surveys, use of the DOT and Skiltran Job Browser Pro, and his impartial testimony under oath, whether all of that inherently reliable evidence is undermined by confusing computer printout and a layperson's conclusory statements, where that layperson did not even explain his own experience, the inputs, methodologies, or standards for interpreting data. You know, stated another way, did Mr. Wishman's counsel show that the vocational expert's inherently reliable testimony was so feeble or contradicted that it failed to clear the low substantial evidence bar? You know, under the specific facts in this case, the answer is no. Mr. Wishman did not satisfy the BREWS standard for a remand. This case is similar to this court's decisions in Kilpatrick and Terry and his unpublished decision in Kremlinson. The new evidence was insufficient to preclude the agency from relying on the vocational expert's testimony. If there are no further questions, we ask the court to affirm, because the district court correctly held, that the new evidence submitted to the appeals counsel did not deprive the ALJ's decision of substantial evidence. Okay. Mr. Warren, you have a couple of minutes left. A year on me. Ood. So, as was noted, essentially this case does come down to a clarification of white. We submitted job browser pro evidence, just as white and buck both did. In both of those cases, that came down to being sufficiently probative to demand a response from the commissioner. And here, the commissioner did not do so. The only difference between this case and white is the fact that we don't necessarily know if we use the same methodology because of the phrase, we use surveys. But that would fall under the commissioner to determine whether or not those surveys would be sufficient to actually rebut the significant and probative evidence that we offered. Now, one of the points that Appellant made a moment ago was about the extreme difference between our numbers and the numbers offered by the vocational expert. The first issue with that is that was the entire point and the reason that a remand was necessary in both buck and white. And beyond that, if you even look at the case of white, the vocational expert in that case offered 65,000 assemblers. The representative in white submitted job browser pro data that suggested there were zero assembler jobs of that type in the national economy. So, the entire point is that a remand was necessary to get that information and to verify why there was such a distinction. Based on the evidence we have here, it would seem that both we and the vocational expert should have been starting from the same point with that job browser pro data. There's no testimony from the vocational expert, no discussion from the commissioner as to how we could both start from the same job browser pro source and how suddenly the numbers could go up 30-fold based on, I guess, surveys offered by the vocational expert that we have no information on. Now, as was raised and noted, the Kilpatrick case, while similar in some ways, is very similarity of methodology between the two cases. In the case of Kilpatrick, the vocational expert testified to using a computer program, whereas the representative then submitted data that was several years old and using a methodology that the Seventh Circuit, I believe, has considered to be inherently unreliable. Whereas here, the court in white has essentially said that job browser pro is relied upon by Social Security and, more generally, vocational experts. That's what we followed here, and that's why it should go back to the commissioner. All right. We thank both sides for their argument. The case of Wischman v. Kiyokazi is submitted.
judges: IKUTA, COLLINS, Fitzwater